COLUMBIAN EQUIPMENT CO. v. HIGHLAND AVE. & B. R. CO.

(Circuit Court, N. D. Alabama.    June 20, 1896.)

EQUITY—JURISDICTION—SPECIFIC PERFORMANCE.

The H. R. R. Co. entered into a contract with the E. Co. by which the street railroad of the former was leased to the latter for 18 months at a nominal rent, and it was agreed that the E. Co. should have the right and option at any time during the lease to purchase the railroad for $350,000, for which option the E. Co. was to pay $35,000,—$20,000 at once, and $15,-000 in six weeks; that the E. Co. should have immediate possession, and should spend certain sums in betterments; that the railroad company should execute good and sufficient deeds of the property, and deposit them in escrow, to be delivered on payment of the purchase money; that if the option were exercised the $35,000, and any sums advanced for the railroad company, should be credited on the price, but if it were not exercised during the term of the lease it should be wholly terminated, the $35,000 should be forfeited, and the deeds should be returned to the railroad company. The E. Co. afterwards filed a bill against the railroad company, alleging that it had taken possession of the road, and spent $27,000 in betterments; that various misrepresentations had been made by the railroad company as to its title, etc.; that it had not deposited any deed of the property until near the expiration of the lease; and that it was insolvent,—and thereupon prayed that the contract might be rescinded, and the E. Co. declared entitled to a lien on the property for the betterments; that a receiver might be appointed, and the property sold, and the assets of the railroad company marshaled among its creditors. There was no allegation that the E. Co. had been deceived by the alleged mis-

representations, and an amended bill subsequently admitted that the E. Co. had been acquainted with all the facts, and eliminated the charge of fraud. Neither was there any allegation that the E. Co. had availed itself of the option, or attempted to do so. *Held*, that the E. Co. could not put itself in the position of a vendee seeking specific performance of the contract, as one of sale; that it had no lien on the property, either as a vendee, or as a lessee in possession, and no claim to equitable relief; and that the bill must be dismissed.

### On Motion to Dissolve Injunction and Discharge Receiver.

Alex. T. Loudon and Geo. F. Moore, for the motion.
John F. Martin and Wm. Grant, contra.

PARDEE, Circuit Judge. The Columbian Equipment Company, a West Virginia corporation, filed its bill against the Highland Avenue & Belt Railroad Company, an Alabama corporation, and therein alleged that on or before the 31st day of December, 1894, the defendant was engaged in operating a belt railroad and dummy line in and through the city of Birmingham, Ala., in the county of Jefferson, and on said date entered into an agreement in writing with the complainant for the sale of all of the properties, which agreement is in the words and figures as follows, to wit:

"State of Alabama, Jefferson County.

"An agreement entered into this the 31st day of December, 1894, by and between the Highland Avenue & Belt Railroad Company, a corporation created and organized under the laws of Alabama, hereinafter termed the 'Railroad Company,' party of the first part, and the Columbian Equipment Company, a corporation created and organized under the laws of West Virginia, hereinafter designated the 'Equipment Company,' party of the second part. Whereas, the parties of the first part have entered into a preliminary agreement in respect to the matters herein provided and contracted for, as appears by the records and proceedings of the said two corporations; and whereas, by a resolution of the board of directors held on the 30th day of November, 1894, the terms of this contract were agreed upon, and Henry M. Caldwell was authorized, on behalf of the railroad company, to execute the same; and whereas, the said parties hereto are each, respectively, expressly authorized by their respective charters to enter into this contract: Now, this agreement witnesseth: (1) The railroad company does hereby lease and let to the equipment company all of its railroad, with all of the rolling stock, engines, tools, machines, equipments, supplies, and materials of all kinds, now used, or to be used, in connection therewith, and also all real estate, personal property, franchises, rights of way, and privileges, for the period of eighteen (18) calendar months from the first day of December, 1894, at and for the rental of five ($5) dollars per annum, and the proportionate part of said rental for any less time than one year; the said rental to be payable on the termination of said lease. (2) The railroad company covenants and agrees that it will procure, at its own cost and expense, for the benefit of said equipment company, within two (2) months from the first day of December, 1894, the right of way necessary for a railroad track to connect the line of the Birmingham & Gate City Street Railroad with the track of the Highland Avenue & Belt Railroad, at or near the gin factory on Tenth avenue. (3) Said railroad company further agrees that said equipment company shall have the right and option at any time during the continuance of said lease to purchase all the said railroad, real estate, property, franchises, privileges, and rights of way of said railroad company for the sum of three hundred and fifty thousand ($350,000.00) dollars, upon the following conditions and terms: For said option and privilege the said equipment company shall pay to the said railroad company the sum of thirty-five thousand dollars ($35,000.00), as follows: Twenty thousand ($20,000.00) dollars on or before the first day of January,

1895, at which time the railroad company will deliver the possession of all of said railroad, real estate, property, franchises, privileges, and rights of way to said equipment company, and fifteen thousand ($15,000.00) dollars on or before the fifteenth day of February, 1895. In the event of a failure to pay said fifteen thousand ($15,000.00) dollars by the fifteenth day of February, 1895, said privilege and option shall on that day cease and determine, and the twenty thousand ($20,000.00) dollars previously paid shall be thereby forfeited, and the possession of the property shall be forthwith restored to the railroad company. In case the said equipment company shall exercise its right and option to make said purchase within the time above specified, to wit, during the continuance of this lease, said sum of thirty-five thousand ($35,000.00) dollars so paid as aforesaid shall be considered and treated as a part of the purchase price, and the residue, to wit, three hundred and fifteen thousand ($315,000.00) dollars, shall be paid, with interest at the rate of five (5) per centum per annum from the first day of January, 1895, to the time of payment. (4) The said railroad company hereby agrees to have prepared and duly executed to said equipment company within thirty (30) days after the payment of said sum of fifteen thousand ($15,000.00) dollars, as herein above provided, good and sufficient deed or deeds of conveyance and transfer of all of said railroad, real estate, property, franchises, and right of way, and to deposit said deed or deeds and transfers with the Central Trust Company of the City of New York, in escrow, to be delivered to said equipment company whenever, within the period of said option, to wit, on or before the 1st day of June, 1896, said sum of three hundred and fifteen thousand ($315,000.00) dollars, with the interest thereon at five per centum per annum from the first day of January, 1895, shall have been deposited in said Central Trust Company to the credit and subject to the check of the railroad company, less any amounts which the equipment company may in the meantime have seen fit to pay or to advance to said railroad company. Said railroad company further covenants and agrees that it will make said conveyance and transfer of said railroad, real estate, property, franchises, and right of way, free and unincumbered of all liability, and will pay off and discharge all liens, taxes, or judgments which now exist, or which may hereafter be obtained, upon the liabilities of the railroad existing on the first day of December, 1894. (5) Said railroad company agrees that it will apply a portion of said thirty-five thousand ($35,000.00) dollars to the satisfaction, in part, of the judgments now existing as a lien on said property. It further agrees that it will protect the said equipment company, in the operation of said property, from the judgments already recovered against it, or which may hereafter be recovered, on liabilities existing as aforesaid, so that the same shall not interfere with the operation of said property by the said equipment company. (6) In the event the said equipment company fails, within the period of said option and privilege, to wit, on or before the first day of June, 1896, to pay said sum of three hundred and fifteen thousand ($315,000.00) dollars, with interest, as aforesaid, less such sum to which it may be entitled as credits thereon, if any, said option and privilege to purchase shall thereupon and thereby, and without further notice, absolutely cease and determine, and the said equipment company will restore to said railroad company the possession of the said railroad, real estate, property, franchises, and right of way, free and discharged of any lien, interest, claim, or demand done or suffered by said equipment company, except the taxes for the year 1895; and the said Central Trust Company shall in that event return to the said railroad company the deeds, conveyances, transfers, and agreements which may be deposited in escrow with it, without the payment of any commission or other charge whatsoever upon the same. (7) Said equipment company covenants and agrees on its part that it will pay said sum of thirty-five thousand ($35,000.00) dollars as herein provided; that during the term of said lease, and within six (6) months from the first day of January, 1895, it will make, or cause to be made, improvements and betterments on the property and equipments of said railroad company, at an expenditure of not less than ten thousand ($10,000.00) dollars. The said equipment company also agrees that it will pay the taxes on said property for the current year, and the amount so paid for taxes, with interest at five (5) per centum per annum, shall be re-

garded and treated as a credit on said sum of three hundred and fifteen thousand ($315,000.00) dollars, to be paid in the event it shall exercise the option herein provided. And the said equipment company further agrees that it will advance and pay such additional sum as may be necessary to pay said judgments recovered and to be recovered as aforesaid, in the event the said railroad company cannot postpone the payment of the same until after the time when the said equipment company shall exercise its said option; said agreement being subject to the agreement on the part of the railroad company to protect the said equipment company against interference in the operation of said property by said judgments. In witness whereof, the Highland Avenue and Belt Railroad Company authorizes this contract to be executed by Henry M. Caldwell, one of its directors, and its corporate seal to be hereto attached, this the day and date first above written. Executed in duplicate.

"Highland Av. & Belt R. R. Co.,
"[Seal.]      Per H. M. Caldwell, Director with Full Power to Act.

"The Columbian Equipment Company hereby accepts the foregoing lease and contract, and in witness thereof has caused the same to be executed by its president and secretary, and its corporate seal to be hereto affixed, in duplicate, the day and date as aforesaid.

"The Columbian Equipment Co.
"Wayland Trask, President.
"[Seal.]      Clarence E. Stump, Secretary."

The bill then proceeds, among other things, to allege that the complainant took possession of the belt railroad and dummy line, and other properties of the defendant, holding and operating them continuously until the present time; that the complainant under the aforesaid agreement has paid the sum of $35,000 in cash, and in addition thereto has expended on improvements and betterments a large sum, to the amount of $27,108.56; and that the defendant did not until the first week in May, 1896, deposit with the Central Trust Company of the City of New York an instrument in writing, in escrow, purporting to be a deed of conveyance and transfer, a copy of which instrument is attached and made part of the bill. The bill then sets out that, prior to the execution of the agreement, various and sundry specific representations were made by the defendant to the complainant as to the extent and title of the property of the defendant, and then charges that to several parts of the property, right of way, etc., the defendant had no title, or not full title; all this being charged at length and in detail, but not necessary, for the purposes of this case, to recite. It is to be noticed, however, that the bill nowhere charges that the complainant acted upon, or was deceived by, any of the representations of the defendants, nor that the complainant accepted or availed itself of its option to purchase the properties of the Belt Railroad within the time prescribed in the agreement or since. The bill charges the insolvency of the Highland Belt Railroad Company; the necessity of keeping the property as a whole, to preserve the same, and to ward off executions, etc. The bill prays for a decree adjudging that the contract be rescinded, canceled, declared of no effect, null and void; that an equitable lien be declared upon all the property of the defendant, in favor of the complainant, for the amounts expended by complainant under and in pursuance of the agreement, and for such damages as may seem just and proper; that all the properties of the defendant be sold to sat-

isfy complainant's demands, the proceeds be applied to the payment of costs and expenses, and demands of such person or parties as may, by decree of the court, be entitled to priority over the payment of orator's claim; for the marshaling and distribution of assets; for the appointment of a receiver; and for an injunction. The bill and exhibits were presented ex parte to one of the judges of the court, who, on the showing made, issued the injunction and appointed a receiver as prayed for.    Subsequent to these proceedings, the case having been referred to the undersigned at the request of the judge making the original order, and the case having been set for hearing on a motion to dissolve the injunction and discharge the receiver, the complainant presented an amended bill, which, although more in detail as to the facts in the case, does not materially alter the case made by the original bill, but does show that prior to entering into the contract, which is one of lease, and for an option to purchase, the Columbian Equipment Company, by its agents, investigated the whole matter of the title and properties and rights therein of the Highland Avenue & Belt Railroad Company, and in the light of the representations by the last-mentioned company, and with the aid of counsel, ascertained for itself nearly if not all the facts complained of in the bill.    On the hearing the defendant has presented a sworn answer, and submitted affidavits which show with great certainty that the representations complained of in the bill were all investigated by the Columbian Equipment Company and its agents with the aid of counsel, and the true facts ascertained as to the right, title, and interest of the defendant company in and to the property described in the agreement, before the payment of the $15,000, the second installment provided for in the contract, if not before the contract was entered into. Counsel for the complainant admitted on the hearing that on the showing made, so far as the representations tending to deceive the Columbian Equipment Company as to the specific property sold, and the rights of the Belt Railroad therein, are concerned, no case is made for relief on account of fraud; but they contend that the suit is one for the specific performance of the contract, and that, under all the facts shown in the bill, the court has equitable jurisdiction, and the injunction was properly issued and the receiver properly appointed.    Under the contract set forth in the bill, the complainant became the lessee of, with an option to purchase for a stipulated price within a definite time all the property of the Highland Avenue & Belt Railroad Company.    As the complainant never availed itself of the right to purchase at the price named and within the time specified, it is impossible that the complainant can put itself in the position of a vendee seeking the specific performance of the contract as one of sale, particularly when the relief that is asked at the hands of the court is not the performance of the contract, but the rescission and annulment of the same.    In fact, the contract in question has been performed.    As the complainant is not a vendee of the property, it has no lien as vendee, for any amounts paid for the option; and, as a lessee in possession, it certainly has no lien for the payment

of such amounts. Without a lien upon the property of the Highland Avenue & Belt Railroad Company, the Columbian Equipment Company, as a creditor whose demand is not liquidated, if a creditor at all,—all questions of alleged fraud eliminated,—has no standing in a court of equity. In this respect, it is immaterial whether the Highland Avenue & Belt Railroad Company is solvent or insolvent, or whether its properties ought, in the interest of the complainant or the public, to be preserved as an entirety. It is equally immaterial whether the complainant is solvent, and was able to comply with the terms granted in the option. The substance of the case, as now presented, is that the Columbian Equipment Company bought, for a price, an option to buy at a stipulated price, within a certain time, the property of the Highland Avenue & Belt Railroad Company. There was no fraud or mistake warranting relief. The equipment company did not avail itself of the option, and did not within the stipulated time, nor since, pay or tender the price. On this case, equity can give no relief. The motion to discharge receiver and dissolve injunction should be granted.